# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
August 2, 2016 Session

## STATE OF TENNESSEE v. SHERRY ANN CLAFFEY

**Appeal from the Circuit Court for Tipton County**
**No. 7671      Joe H. Walker, III, Judge**
_____

**No. W2016-00356-CCA-R3-CD Filed December 14, 2016**
_____

Sherry Ann Claffey ("the Defendant") entered a no contest plea to two counts of vehicular homicide as a result of reckless conduct. Following a hearing, the trial court denied judicial diversion, sentenced the Defendant to concurrent terms of five years on each count, and ordered the Defendant to serve 200 days in confinement and to serve the balance of her sentence on probation. On appeal, the Defendant argues that because the trial court failed to properly consider the factors applicable to judicial diversion, no presumption of reasonableness should apply to the trial court's denial of judicial diversion, and this court should conduct a de novo review of the record and grant judicial diversion. After a review of the record and applicable law, we conclude that because the trial court unduly considered irrelevant facts concerning the death of victims and facts not supported by the proof concerning the Defendant's prescription drug usage to support the three factors on which it relied to deny judicial diversion, no presumption of reasonableness applies. After reviewing the record de novo, we hold that judicial diversion should be granted to the Defendant and reverse the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Reversed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and CAMILLE R. MCMULLEN, JJ., joined.

Mark S. McDaniel, Memphis, Tennessee, and Kevin G. Patterson, Germantown, Tennessee for the appellant, Sherry Ann Claffey.

Herbert H. Slatery III, Attorney General and Reporter; Zachary T. Hinkle, Assistant Attorney General; Mike Dunavant, District Attorney General; and James Walter Freeland, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

## I. Factual and Procedural Background

On January 4, 2013, the Defendant was involved in a fatal car accident with Shelly Harvey, and her mother, Peggy Harvey.[1] The Defendant, who was injured in the accident, did not remember how the accident occurred. According to the Reconstruction Report prepared by the Tennessee Highway Patrol Critical Incident Response Team ("the Response Team"), the Defendant prior to the accident had been driving in the right most, northbound lane of Highway 51, in Tipton County, Tennessee.[2] This section of the roadway "is a straight four lane road with two northbound lanes and two southbound lanes divided by a grassy median and cable barrier." According to the Reconstruction Report:

> As the Defendant's vehicle approached the [victims' vehicle] from the rear at a higher rate of speed, the [Defendant] changed lanes in an attempt to pass the [victims' vehicle] on the left. As the [Defendant's vehicle] attempted to pass, it suddenly moved back into the right most lane and struck [the victims' vehicle] in the rear with its front.

After being struck, the victims' vehicle fishtailed, flipped, and struck a utility pole causing the roof to become detached, at which point the victims were ejected. The victims' vehicle then flipped again, struck the top of the Defendant's vehicle, and landed on the right side of Highway 51. According to information obtained from the "crash data retrieval report," the Defendant's vehicle was traveling at approximately seventy-two miles per hour at the time of the initial impact. The speed limit where the accident occurred was fifty-five miles per hour.

Both victims were pronounced dead at the scene of the accident; the Defendant was taken to Baptist Memorial Hospital in Tipton County and treated for injuries. Later that day, a sample of the Defendant's blood was drawn for analysis. The Defendant's blood tested negative for alcohol but tested positive for phenobarbital, phentermine at .06 UG/ML, fluoxetine at .08 UG/ML, norfluoxetine, and dihydrocodeinone. In the Reconstruction Report, the Response Team concluded that the accident resulted from the

---

[1] Due to the victims having the same last name, we will refer to them by their first names or collectively as "the victims." No disrespect is intended.

[2] The Reconstruction Report is quoted extensively in the Defendant's presentence report, but the report was not entered as an exhibit in the record. Although the presentence report is included in the technical record, it was not marked as an exhibit. At the beginning of the sentencing hearing, the parties agreed that presentence report had been filed, that they had reviewed it, and that there were no corrections that needed to be made. The parties stipulated that the trial court "c[ould] accept" the report.

Defendant's failure to maintain control of her vehicle while speeding. The Response Team also concluded that the Defendant was under the influence of drugs while driving.

In July 2013, the Defendant was indicted on two counts of vehicular homicide as a result of intoxication. On December 14, 2015, the State and the Defendant reached a plea agreement by which the Defendant would enter a no contest guilty plea to two counts of vehicular homicide as a result of reckless conduct, the Defendant would seek judicial diversion, and the State would recommend a concurrent sentence of 5 years imprisonment for each count.

At the subsequent sentencing hearing, the State called as its only witness, Delbert Lee Harvey, Shelly Harvey's brother and Peggy Harvey's son. Mr. Harvey stated that he had recently retired and returned home after 22 years in the military and that he had "intended to reunite with [his mother and sister] and strengthen those ties." Mr. Harvey testified that he passed the accident on his way to work on January 4, but he was not aware that his family members were involved until a deputy sheriff came to Mr. Harvey's workplace to inform him of the fatal accident. Mr. Harvey said that granting judicial diversion or probation to the Defendant "wouldn't . . . be justice in this case." Mr. Harvey continued: "And just because [the Defendant] didn't have . . . any prior incidents of any crimes or anything doesn't mean that she shouldn't serve time for what she did. She took two lives. We . . . would like to see her pay for that with something just besides diversion or probation."

Three individuals testified about the Defendant's character and reputation. Sandra Garten-Melline stated that she had known the Defendant for eighteen to nineteen years and that the Defendant was a very honest, kind, and compassionate person who had helped Ms. Garten-Melline and her family in the past. Ms. Garten-Melline believed that the Defendant could follow any rules or conditions of probation and obey the law. Rhonda Dukes testified that she had known the Defendant for five or six years, that the Defendant was a truthful person, and that the Defendant would comply with any conditions set by the trial court. Lynda Darnell testified that she had known the Defendant for about twenty years and believed that the Defendant was a truthful and compassionate person who could follow any conditions of diversion or probation set by the trial court.

The Defendant, who was sixty-five years old at the time of the sentencing hearing, testified that her oldest daughter and three grandchildren lived with her and her husband. The Defendant and her husband had legal custody over the two youngest grandchildren, and the Defendant transported all her grandchildren to and from school, sports practices, and medical appointments because her husband worked during the day and was frequently away from home for his employment at Ford Motor Company. The Defendant

- 3 -

said she had previously worked at Thompson Consumer Electronics as a forklift driver and in the print shop, but that she has been a homemaker since the 1990's. The Defendant testified that prior to the accident, she had no moving violations, no tickets, and no accidents, and that she had not received any speeding tickets or moving violations since the accident. Her driving record which was admitted as an exhibit confirmed her testimony. Additionally, the Defendant testified that she had never been arrested before the accident.

Regarding the accident, the Defendant testified that she was driving to pick up her oldest grandchild from school when the accident occurred, but that she had "little recollection" of the events leading up to the accident and does not remember how the accident occurred. The Defendant stated that she could follow any conditions of diversion or probation that the trial court ordered. Lastly, the Defendant told the Harvey family that she was "truly, truly sorry that unfortunately" [their] "loved ones were taken away." On cross-examination, the Defendant testified that she has continued to drive after the accident and also has continued to take phentermine, fluoxetine, and dihydrocodeinone, all of which contained a warning to be cautious when operating a motor vehicle. However, the Defendant testified that she took the medications in the manner and dosage prescribed by her physician and that she confirmed with her doctor that it was not dangerous to take those medications together.

On redirect, the Defendant testified that she authorized Dr. Henry Spiller, a toxicology expert, to review her medical records and the blood sample taken after the accident. Dr. Spiller's report was admitted into evidence without objection. In the summary section of his report, Dr. Spiller stated "there is no evidence in the medical record or toxicology laboratory results that document or suggest impairment or document that [the Defendant] was under the influence of drugs." Dr. Spiller noted that there was "a single note" in the Response Team report stating, "I noticed her speech was slurred and her eyes were blood shot red." Dr. Spiller stated that none of the medications shown in the toxicology report cause blood shot eyes. Dr. Spiller opined to a reasonable degree of scientific certainty "that there is no evidence of impairment from drugs or alcohol."

After the conclusion of witness testimony and arguments of counsel, the trial court announced that "this is not a proper case to grant diversion due to the circumstances of the offenses, the deterrence value of driving while having drugs in your system and that judicial diversion would not serve the ends of justice where two people lost their life." The trial court then sentenced the Defendant to concurrent terms of five years on each count, as a standard offender. The court stated that the Defendant was a suitable candidate for probation and placed the Defendant on supervised probation after the service of 200 days in jail.

On the same day, the trial court entered a written order denying the Defendant judicial diversion stating that it had

> considered the [D]efendant's criminal record, social history, mental and physical condition, attitude, behavior since arrest, emotional stability, current drug usage, past employment, home environment, marital stability, family responsibility, general reputation, and amenability to correction; as well as the circumstances of the offense, the deterrent effect of punishment upon other criminal activity, and the likelihood that pretrial diversion will serve the ends of justice and best interests of both the public and the [D]efendant.

Additionally, the trial court noted in the written order that the Defendant had a good driving record prior to the accident and was on her way to pick up her grandchild from school when the accident occurred.

However, the trial court also noted that the Defendant admitted to using all of the prescription drugs that were found in her system and that the Defendant testified that she was still using the drugs. Further, the trial court referred to the Defendant's report from a medical expert "which indicated that there was no problem with using those drugs," but the trial court noted that the Defendant "had no explanation for the accident where two people were killed." In addition to denying judicial diversion and sentencing the Defendant to split confinement, the trial court ordered that the Defendant's driving privileges be suspended for five years. This timely appeal followed.

## II. Analysis

On appeal, the Defendant argues that the trial court merely recited the Parker and Electroplating factors in determining whether the Defendant should have been granted judicial diversion and, therefore, the trial court's decision should not be afforded a presumption of reasonableness and this court should conduct a de novo review and grant judicial diversion. The Defendant also argues that the trial court unduly considered the victims' deaths and the Defendant's prescription medication usage, which were irrelevant facts. The State responds that the trial court properly considered the applicable factors, and therefore, this court should apply a presumption of reasonableness to the trial court's decision. Further, the State argues that the trial court properly considered the victims' deaths and the Defendant's drug usage along with the other factors and urges this court to affirm the denial of judicial diversion.

When the record clearly establishes that the trial court imposed a lawful sentence after a "proper application of the purposes and principles of our Sentencing Act," this

court reviews the trial court's sentencing decision under an abuse of discretion standard with a presumption of reasonableness. State v. Bise, 380 S.W.3d 682, 707 (Tenn. 2012); see also State v. Caudle, 388 S.W.3d 273, 278-79 (Tenn. 2012). A finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" State v. Shaffer, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting State v. Moore, 6 S.W.3d 235, 242 (Tenn. 1999)).

The Tennessee Supreme Court has stated that Bise applies to a trial court's decision regarding judicial diversion. State v. King, 432 S.W.3d 316, 322 (Tenn. 2014). However, the trial court must still consider the factors enumerated in State v. Parker, 932 S.W.2d 945 (Tenn. Crim. App. 1996), and State v. Electroplating, Inc., 990 S.W.2d 211 (Tenn. Crim. App. 1998). Id. at 322-23. We will affirm the trial court's judgment "so long as there is any substantial evidence to support the trial court's decision." Id. at 327. However, if the trial court fails to consider and weigh the relevant factors, the presumption of reasonableness does not apply, and this court may either conduct a de novo review or remand the issue for reconsideration. Id. at 327-28.

*Judicial Diversion*

Tennessee Code Annotated section 40-35-313 governs judicial diversion. Upon a finding of guilt, the trial court may place a qualified defendant on probation without entering a judgment of conviction. Tenn. Code Ann. § 40-35-313(a)(1)(A) (2014). Once the defendant successfully completes probation, the charge will be dismissed. Tenn. Code Ann. § 40-35-313(a)(2) (2014). The statute defines a "qualified defendant" as a defendant who:

> (a) Is found guilty of or pleads guilty or nolo contendere to the offense for which deferral of further proceedings is sought;
>
> (b) Is not seeking deferral of further proceedings for any offense committed by any elected or appointed person in the executive, legislative or judicial branch of the state or any political subdivision of the state, which offense was committed in the person's official capacity or involved in the duties of the person's office;
>
> (c) Is not seeking deferral of further proceedings for a sexual offense, a violation of § 71-6-117 or § 71-6-119, driving under the influence of an intoxicant as prohibited by § 55-10-401, or a Class A or B felony;
>
> (d) Has not previously been convicted of a felony or a Class A misdemeanor for which as sentence of confinement is served; and

- 6 -

(e) Has not previously been granted judicial diversion under this chapter or pretrial diversion.

Tenn. Code Ann. § 40-35-313(a)(1)(B)(i) (2014).

However, satisfying these criteria does not presumptively entitle a defendant to judicial diversion but simply allows the trial court to grant diversion in appropriate cases. Parker, 932 S.W.2d at 958. The defendant bears the burden of proving that he or she is a suitable candidate for judicial diversion. State v. Faith Renea Irwin Gibson, No. E2007-01990-CCA-R3-CD, 2009 WL 1034770, at *4 (Tenn. Crim. App. Apr. 17, 2009) (citing State v. Curry, 988 S.W.2d 153, 157 (Tenn. 1999); State v. Baxter, 868 S.W.2d 679, 681 (Tenn. Crim. App. 1993)).

In determining whether to grant judicial diversion to a qualified defendant, the trial court must consider the following factors:

(a) the accused's amenability to correction; (b) the circumstances of the offense; (c) the accused's criminal record; (d) the accused's social history; (e) the accused's physical and mental health; (f) the deterrence value to the accused as well as others; and (g) whether judicial diversion will serve the interests of the public as well as the accused.

Electroplating, Inc., 990 S.W.2d at 229; Parker, 932 S.W.2d at 958. In addition to the Electroplating factors, the trial court may consider the following factors in making its decision: "[the defendant's] attitude, behavior since arrest, prior record, home environment, current drug usage, emotional stability, past employment, general reputation, marital stability, family responsibility[,] and attitude of law enforcement." State v. Anthony Adinolfi, No. E2013-01286-CCA-R3-CD, 2014 WL 2532335, at *2 (Tenn. Crim. App. June 2, 2014) (quoting State v. Washington, 866 S.W.2d 950, 951 (Tenn. 1993)) (internal quotation marks omitted).

The record must reflect that the trial court weighed all the Electroplating factors against each other, and the trial court must give an explanation of its ruling on the record. State v. King, 432 S.W.3d 316, 326 (Tenn. 2014); Electroplating, Inc., 990 S.W.2d at 229. "Although the trial court is not required to recite all of the Parker and Electroplating factors when justifying its decision on the record in order to obtain the presumption of reasonableness, the record should reflect that the trial court considered the Parker and Electroplating factors in rendering its decision and that it identified the specific factors applicable to the case before it. Thereafter, the trial court may proceed to solely address the relevant factors." King at 327.

After announcing that "this is not a proper case to grant diversion due to the circumstances of the offenses, the deterrence value of driving while having drugs in your system and that judicial diversion would not serve the ends of justice where two people lost their life," the trial court issued a written order reciting the Parker and Electroplating factors, stating that it had

> considered the [D]efendant's criminal record, social history, mental and physical condition, attitude, behavior since arrest, emotional stability, current drug usage, past employment, home environment, marital stability, family responsibility, general reputation, and amenability to correction; as well as the circumstances of the offense, the deterrent effect of punishment upon other criminal activity, and the likelihood that pretrial diversion will serve the ends of justice and best interests of both the public and the [D]efendant.

The trial court weighed these factors both at the sentencing hearing and in its written order by discussing the Defendant's driving record, the circumstances surrounding the accident, the Defendant's prescription drug usage, and by discussing which factors it found most pertinent: "the circumstances of the offenses, the deterrence value of driving while having drugs in your system, and that judicial diversion would not serve the ends of justice where two people lost their li[ves]."

*Undue Consideration of Irrelevant Factors*

The Defendant argues that the trial court unduly considered her usage of prescription drugs in its denial of judicial diversion. Additionally, the Defendant argues that because the legislature did not preclude vehicular homicide from the list of crimes for which diversion is applicable, the trial court abused its discretion by unduly considering the deaths of the victims. The State responds that the trial court properly considered both the Defendant's usage of prescription drugs and the victims' deaths. We conclude that no presumption of reasonableness applies to the trial court's decision because the court unduly considered irrelevant evidence concerning the victims' deaths and because there is no substantial evidence to support its conclusions regarding the Defendant's use of prescription medications.

**1. Consideration of Victims' Deaths**

This court has previously held that a trial court may not rest its decision to deny judicial diversion to a qualified defendant solely on the grounds that a victim died due to the defendant's crime. State v. Jared Booth Spang, No. M2014-00468-CCA-R3-CD, 2015 WL 510921, at *4 (Tenn. Crim. App. Feb. 6, 2015); State v. Teresa Turner, No.

- 8 -

M2013-00827-CCA-R3-CD, 2014 WL 310388, at \*1 (Tenn. Crim. App. Jan. 29, 2014); see also Chyanne Elizabeth Gobble, No. E2014-01596-CCA-R3-CD, at \*13 (noting that the defendant would have been eligible for judicial diversion if she had been charged with vehicular homicide); State v. Kyto Sihapanya, No. W2012-00716-CCA-R3-CD, 2013 WL 6001925, at \* 7 (Tenn. Crim. App. Nov. 8, 2013) (noting that "the [d]efendant's conduct satisfied the elements of the offense but nothing exist[ed] in the record suggesting his conduct was aggravated in such a way that justified denying diversion because the victim died[]"), rev'd on other grounds by State v. Kyto Sihapanya, No. W2012-00716-SC-R11-CD, 2014 WL 2466054, at \* 4 (Tenn. April 30, 2014).

In State v. Teresa Turner, the defendant pled guilty to reckless homicide based on a traffic accident where one victim died and three other victims were seriously injured. 2014 WL 310388 at \*1. At the sentencing hearing, the trial court found that the interest of the public would not be served by a grant of judicial diversion "when one is killed through actions of another." Id. at \*6. Further, the trial court found that the circumstances of the case and the deterrence value weighed against judicial diversion because the trial court wanted to "give a clear understanding that when life is taken through the activities such as this, that a case should not be dismissed, but that there should be a conviction for the case and a sentence which is appropriate." Id. On appeal, a panel of this court held that the trial court abused its discretion when it "denied judicial diversion solely because a death was involved." Id. Additionally, this court held that "the trial court did not review all of the relevant factors and explain 'both the specific reasons supporting denial and why those factors applicable to the denial of diversion outweigh other factors for consideration.'" Id.

In State v. Jared Booth Spang, this court noted that the trial court improperly considered the permanency of the death of the victims when it denied judicial diversion because "[d]eath is always permanent in a homicide case and cannot be considered as a factor for denying diversion . . . ." 2015 WL 510921 at \*4. However, the court held that "the circumstance leading to death can be considered." Id. Ultimately, this court concluded that the trial court did not abuse its discretion by denying judicial diversion because "[t]he permanence of death was not the sole factor upon which the trial court denied diversion."[3] Id.

Here, in addition to denying diversion based upon the Defendant's use of prescription drugs, the trial court denied judicial diversion based on "the circumstances of the offenses" and its determination that "judicial diversion would not serve the ends of justice where two people lost their life." Other than a reference to the Defendant's

---

[3] In Spang, this court reversed and remanded the case because the district attorney general breached the written plea agreement by arguing against diversion when it had agreed not to do so.

inability to remember what occurred moments before the accident, the trial court failed to identify reasons why or explain how the circumstances of the offenses weighed against diversion. See State v. Bonestel, 871 S.W.2d 163, 168 (Tenn. Crim. App. 1993) (quoting State v. Herron, 767 S.W. 2d 151, 156 (Tenn. 1989)) (concluding that in a denial of judicial diversion, the trial court must make "more than an abstract statement in the record that [the trial court] has considered [the Parker and Electroplating factors]"), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9-10 (Tenn. 2000). The only remaining factor cited by the trial court then was its conclusion that the ends of justice because the victims died. However, a victim's death is involved in every case of vehicular homicide, and our judicial diversion statute does not preclude vehicular homicide as a divertible offense. See Tenn. Code Ann. § 40-35-313. The trial court did not address what weight, if any, it gave to Mr. Harvey's victim impact testimony that an alternative sentence should not be granted because two people died.[4] Thus, when considering whether diversion would serve the ends of justice, the trial court improperly and unduly relied upon the evidence of the victims' deaths to deny judicial diversion. See, e.g., Theresa Turner, 2014 WL 310388 at *6.

## 2. Consideration of the Defendant's Prescription Drug Usage

A trial court's decision to grant or deny judicial diversion is not afforded a presumption of reasonableness when it unduly considers facts that are not relevant to the case at hand. See State v. Devon Elliott Cruze, No. E2014-01847-CCA-R3-CD, 2015 WL 5064070, at *4 (Tenn. Crim. App. Aug. 27, 2015) (remanding to the trial court for reconsideration of judicial diversion when the trial court did not consider all of the Parker and Electroplating factors and "unduly focused on" the defendant's failure to avoid minimal contact with the victims); and State v. Chyanne Elizabeth Gobble, No. E2014-01596-CCA-R3-CD (Tenn. Crim. App. Aug. 12, 2015) (determining that "[i]f a prosecutor can abuse his discretion by considering and placing undue weight upon an irrelevant factor in determining pretrial diversion, then it stands to reason that a trial court

---

[4] Victims of violent crimes involving death of a family member have the right to give impact testimony at the sentencing hearing. Tenn. Code Ann. §§ 40-38-103(a)(2) and 40-35-209(b). Victim impact testimony "must be considered in determining the length of the defendant's sentence and the manner of service of that sentence, to the extent that such testimony contains relevant and reliable evidence establishing enhancing or mitigating factors and/or any other sentencing considerations." State v. Ring, 56 S.W.3d 577, 587 (Tenn. Crim. App. 2001). However, in the case sub judice, the Defendant entered a guilty plea pursuant to a no contest plea agreement, and the sole issue at the sentencing hearing was the manner of service. Therefore, no weight should have been given to the victims' relatives' suggestion that the Defendant should not receive an alternative sentence. As this court pointed out in Ring, "[t]o allow any weight to be given to [victim's desired sentence] would serve to trump all other relevant sentencing considerations." Id. at 584.

can likewise abuse its discretion in considering and placing undue weight upon an irrelevant factor in determining judicial diversion[]").[5]

In the case sub judice, the trial court based its decision to deny judicial diversion on its determination that there was a need to deter individuals from "driving while having drugs in [their] system." However, the record does not support the trial court's apparent conclusion that the prescription drugs taken by the Defendant affected or impaired her driving. The Defendant presented evidence from an expert witness in toxicology that the prescription drugs at the levels shown to be in her blood did not affect or impair her driving, even when combined. In contrast, the State had the opportunity to present evidence that the Defendant's prescription drugs did affect her driving but failed to do so. The State also failed to call the officer who investigated the accident as a witness and to introduce the full copy of the Report as an exhibit. The State presented no evidence that the prescription medications taken by the Defendant contributed in any respect to the accident. Accordingly, evidence that the Defendant used prescription medications was not relevant to the issue of deterrence, and we conclude that the trial court improperly and unduly considered the irrelevant evidence of the Defendant's use of prescription drugs as a basis to deny judicial diversion.

Because the trial court unduly considered irrelevant evidence and did not explain why the "circumstances of the offenses" supported the denial of diversion and outweighed other factors, the trial court's decision to deny judicial diversion to the Defendant is not afforded a presumption of reasonableness and the abuse of discretion standard is not appropriate. We will conduct a de novo review to determine whether the Defendant should be granted judicial diversion. See State v. Rosa Emma Honeycutt, No. E2015-00790-CCA-R3-CD, 2016 WL 5540224, at *6 (Tenn. Crim. App. Sept. 29, 2016) (de novo review of facts was proper when presumption of reasonableness did not apply to the trial court's denial of diversion because the trial court improperly considered its own experience as a prosecutor when weighing the circumstances of the offense and deterrence value).

### III. De Novo Review

After considering the Parker and Electroplating factors, we hold that the Defendant's amenability to correction, the absence of any criminal record, her social history, and her mental and physical health weigh heavily in favor of granting judicial diversion. Other factors that may be considered, including home environment, past employment, general reputation, marital stability, and family responsibility, also weigh in favor of granting judicial diversion.

---

[5] No Westlaw citation is available for this case.

Concerning her behavior since arrest, the Defendant has had no driving violations or other type criminal offenses. The trial court in its written order mentioned that the Defendant continued to use her prescription medications and drive. In our opinion that does not amount to inappropriate behavior since arrest. Concerning the circumstances of the case, the Defendant sped in an aborted attempt to pass and hit the rear of the victims' vehicle when she tried to pull back in line. Her actions support her no contest plea to two counts of vehicular homicide as a result of reckless conduct.

The accused's amenability to correction weighs in favor of granting the Defendant judicial diversion because the Defendant has not received any speeding tickets or moving violations since the accident. The accused's criminal record weighs in favor of granting judicial diversion because the Defendant had no prior criminal record and no citations on her driving record before the current offenses. The Defendant's social history weighs in favor of granting judicial diversion because the Defendant is described as a kind and helpful person by her friends, and she takes care of her three grandchildren and her oldest daughter. Further, the Defendant's physical and mental health weighs in favor of granting diversion because the Defendant is in good physical and mental health and visits a physician regularly. Additionally, we hold that the Defendant's behavior since arrest, emotional stability, past employment, home environment, marital stability, family responsibilities, and general reputation in her community weigh in favor of granting judicial diversion based on her lack of traffic citations since the accident, her employment history as at Thompson Consumer Electronics and as a homemaker, her role as caretaker for her child and grandchildren, and the positive testimony from the character witnesses. We conclude that the Defendant's "attitude" and "current drug usage," factors cited by the trial court, weigh neither for nor against granting judicial diversion to the Defendant. Accordingly, we hold that the Defendant should be granted judicial diversion.

## IV. Conclusion

For the aforementioned reasons, the judgments of the trial court are reversed. We remand this case for the entry of an order placing the Defendant on judicial diversion for a period of five years in accordance with Tennessee Code Annotated section 40-35-313 and for the reinstatement of her driver's license.[6]

_____
ROBERT L. HOLLOWAY, JR., JUDGE

---

[6] Tennessee Code Annotated sections 39-13-213(c) and 55-50-501(a)(3) require the revocation of a defendant's license when the defendant has been convicted of vehicular homicide. Tenn. Code Ann. § 39-13-213(c); § 55-50-501(a)(3). When judicial diversion is granted, the defendant has not been convicted, and no judgment is entered. State v. Dycus, 456 S.W.3d 918,928 (Tenn. 2015). Therefore, these statutes do not apply to the Defendant.